UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CONNIE CLARK,<br><br>Plaintiff,<br><br>v.<br><br>NUTRIEN AG SOLUTIONS INC.,<br><br>Defendant. | Case No. 1:26-CV-210-CCB-ALT |

**OPINION AND ORDER**

Plaintiff Connie Clark, as Special Administrator of the Estate of Richard Clark, sued Defendant Nutrien AG Solutions, Inc. for wrongful death and loss of consortium after Richard Clark suffered fatal injuries at work. (ECF 1). Defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF 8). For the reasons below, the Court grants Defendant's motion to dismiss.

## I. RELEVANT BACKGROUND

Defendant is a large-scale agricultural commodity dealer that supplies fertilizer in the form of anhydrous ammonia ("NH3"). (ECF 1 ¶ 2). NH3 is widely known as an extremely dangerous and volatile product that requires personal protective equipment ("PPE") and separate maintenance areas. (*Id.* ¶ 3).

On April 6, 2024, Richard Clark was working on an out-of-service NH3 pony trailer on Defendant's premises in Huntington County, Indiana. (*Id.* ¶¶ 1, 4). During that work, he was exposed to a release of NH3. (ECF 1 ¶ 1; ECF 1-3 at 6). He was found

unconscious and without the PPE required by Defendant's policies and procedures. (ECF 1 ¶ 4). He later died from his injuries. (*Id.* ¶ 1).

The Indiana Occupational Safety and Health Administration ("IOSHA") investigated the death and issued a Safety Order and Notification of Penalty on August 29, 2024, which Plaintiff attached to the complaint. (*Id.* ¶¶ 5–6; ECF 1-3). IOSHA proposed four "serious" citations with penalties totaling $14,000. (ECF 1-3 at 6–10). Those citations alleged that Mr. Clark was exposed to asphyxiation hazards, did not wear a required neoprene suit and gloves, and demonstrated a lack of knowledge regarding respirator requirements. (*Id.*). IOSHA did not classify any violation as "knowing" or "willful." (*Id.*).

Citing the IOSHA safety order, Plaintiff alleges that Defendant had actual knowledge that its employees, including Mr. Clark, worked with NH3 without using PPE and without two separate "out-of-order" working areas. (ECF 1 ¶¶ 5–6). Plaintiff further alleges that Defendant had "actual knowledge that Richard Clark's injuries and death were certain to occur and did nothing to prevent the same" in violation of Indiana and federal workplace safety regulations. (*Id.* ¶ 7). According to the complaint, Mr. Clark's death resulted from Defendant's "intentional and knowledgeable" actions or inactions in "failing to enforce the use of PPE, failing to provide PPE to protect against the known danger, failing to provide two separate 'out-of-service' maintenance areas and failing to warn of the certain injury and death ultimately suffered by Richard Clark." (*Id.* ¶ 8).

Based on these allegations, Plaintiff seeks relief for wrongful death and loss of consortium. (*Id.* at 1–2). Defendant now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the Indiana Workers' Compensation Act ("IWCA") provides the exclusive remedy for Plaintiff's claims. (ECF 9).

## II. Legal Standard

In response to a complaint, a party may move to dismiss the action by asserting that the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint will survive a Rule 12(b)(6) motion if it contains allegations that state "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face rather than merely conceivable "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In essence, this means the complaint must be "sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

Under this plausibility standard, this Court accepts the well-pleaded factual allegations stated in the complaint as true and views them in the light most favorable to the non-moving party. *See Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 332 (7th Cir. 2019). Legal conclusions and conclusory allegations merely reciting the elements of the claim, however, are not entitled to this presumption of truth. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). After a court excises legal

conclusions and conclusory allegations from the pleading, it determines whether the remaining factual allegations "plausibly suggest an entitlement to relief." *Id.* The Seventh Circuit has interpreted the *Twombly-Iqbal* standard to require a plaintiff to "provid[e] some specific facts" to support the legal claims asserted in the complaint. *Id.* (citing *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

## III. Analysis

Defendant argues that the complaint must be dismissed in its entirety under the IWCA's exclusive remedy provision. Plaintiff responds that her wrongful death and loss of consortium claims survive dismissal under the IWCA's intentional tort exception, or that she should be permitted to conduct limited discovery before amending her complaint. The Court addresses each in turn.

### A. Count I: Wrongful Death

The IWCA provides the exclusive remedy for employees who suffer injury or death "by accident arising out of and in the course of employment." *Sims v. U.S. Fid. & Guar. Co.*, 782 N.E.2d 345, 349 (Ind. 2003); Ind. Code §§ 22-3-2-2(a), 22-3-2-6. When a complaint shows on its face that an injury occurred during employment, the plaintiff bears the burden of showing that the claim falls outside the Act. *Perry v. Stizer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind. 1994).

An employer's intentional torts fall outside the IWCA because the Act covers only injuries that occur "by accident." *Baker v. Westinghouse Elec. Corp.*, 637 N.E.2d 1271, 1273 (Ind. 1994). The Indiana Supreme Court has set a high bar for this exception to apply. "[N]othing short of deliberate intent to inflict an injury, or actual knowledge that

an injury is certain to occur, will suffice." *Id.* at 1275. In adopting this rule, the court rejected the more lenient "substantially certain" test used in other states. *Id.* at 1275 n.5. Thus, even where an employer's negligent or reckless conduct creates a high risk of harm, the IWCA provides the sole remedy. *Id.* at 1275.

Applying *Baker*, the Seventh Circuit and Indiana courts draw a bright line between knowing safety violations and actual knowledge of certain injury. Allegations that an employer "knew of dangerous conditions, prior incidents, or regulatory violations do not establish that it had actual knowledge that injury was inevitable rather than merely foreseeable." *Ins. Co. of the W. v. High Performance Alloys, Inc.*, 185 F.4th 706, 711 (7th Cir. 2026) (citing *Baker*, 637 N.E.2d at 1272–74). In other words, an injury is accidental even if the employer knowingly permits a workplace hazard to exist, willfully violates safety statutes, or ignores prior near-misses and safety precautions. *See, e.g.*, *Agee v. Cent. Soya Co.*, 695 N.E.2d 624, 626–28 (Ind. Ct. App. 1998) (willful safety violations and known risks); *Owens v. DSM Eng'g Plastics, Inc.*, 641 N.E.2d 1271, 1273–74 (Ind. Ct. App. 1994) (dangerous procedure with prior near-misses); *Blade v. Anaconda Aluminum Co.*, 452 N.E.2d 1036, 1036–38 (Ind. Ct. App. 1983) (intentionally disconnecting safety equipment before a fatal explosion).

Measured against this standard, the complaint's well-pleaded facts describe accidental workplace safety violations rather than an intentional tort. Plaintiff alleges that (1) NH3 is volatile and dangerous, requiring PPE and separate maintenance areas (ECF 1 ¶ 3); (2) Defendant knew employees, including Mr. Clark, worked with NH3 without PPE or two separate "out-of-order" working areas (*id.* ¶ 5–6); (3) Mr. Clark died

after exposure to NH3 while servicing an out-of-service pony trailer without PPE (*id.* ¶8; ECF 1-3 at 6); and (4) IOSHA later issued four "serious" citations for these safety lapses (ECF 1-3 at 6–9). As the complaint summarizes, Plaintiff seeks to hold Defendant liable for failing to enforce or provide PPE, failing to maintain separate out-of-service maintenance areas, and failing to warn of the danger. (ECF 1 ¶ 8). Even taken as true, these alleged safety failures constitute accidents covered exclusively by the IWCA. *See Agee*, 695 N.E.2d at 627–28. These facts are not evidence of Defendant's deliberate intent to inflict an injury, or actual knowledge that an injury is certain to occur

Nor does the dangerous nature of NH3 turn these safety violations into an intentional tort. Plaintiff argues that allowing employees to service pony trailers without PPE makes death "certain to occur" because unprotected NH3 exposure causes immediate harm. (ECF 20 at 4). This reasoning conflates the certainty of harm once a leak happens with the certainty that a leak will happen. The complaint alleges no facts suggesting that Defendant intentionally released the NH3 or knew the pony trailer would leak on April 6, 2024. While failing to provide or require PPE around NH3 may create a high probability of harm if a leak occurs, a high risk of injury is not the same as actual knowledge that an injury is certain to occur. *See Baker*, 637 N.E.2d at 1275.

Plaintiff's reliance on the IOSHA safety order to allege pre-accident knowledge also falls short. (ECF 1 ¶¶ 5–6). In *Summers v. Crossroads Galvanizing, LLC*, No. 4:21-CV-39, 2022 WL 3595014, at *5–6 (N.D. Ind. Aug. 22, 2022), an employee was killed when a load fell from an overhead crane after a safety latch was bypassed. *Id.* at *1. The estate alleged that management knew employees routinely bypassed safety latches, ignored

prior complaints, prioritized production over safety, and received a "knowing" IOSHA citation after the fatality. *Id.* at *2. Even so, the court dismissed the complaint, holding that those facts showed at most recklessness, not certainty of harm. *Id.* at *5–6; *see also Summers v. Crossroads Galvanizing, LLC*, No. 4:21-CV-074-PPS-JEM, 2023 WL 7109695, at *6–7 (N.D. Ind. Oct. 27, 2023) (dismissing amended complaint despite addition of six prior near-fatal incidents). The allegations here are weaker. Unlike in *Summers*, here IOSHA issued only "serious" citations, and the complaint alleges no prior NH3 leaks, injuries, or safety complaints. *Cf. Lawson v. Raney Mfg., Inc.*, 678 N.E.2d 122, 128 (Ind. Ct. App. 1997) (noting in dicta that prior similar injuries or safety complaints might support an inference of knowledge).

Finally, Plaintiff cannot satisfy Rule 8's pleading standards simply by asserting Defendant's mental state in conclusory terms. Plaintiff argues that pleading the words "actual knowledge" and "certain to occur" is sufficient to state a claim. *Iqbal* forecloses that argument. Although Rule 9(b) allows intent and knowledge to be pleaded "generally," that does not mean a conclusory allegation will suffice. *See Iqbal*, 556 U.S. at 686–87. Rather, a plaintiff must plead specific facts that support a plausible inference of the requisite mental state. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 886 (7th Cir. 2012).

In the workers' compensation context, "[a] complaint, to survive a motion to dismiss, must do more than merely allege intentional injury as an exception to the general exclusiveness rule; it must allege *facts* that add up to a deliberate intent to bring about injury." *Hurd v. Monsanto Co.*, 908 F. Supp. 604, 610 (S.D. Ind. 1995) (emphasis in

original) (quoting 2 Larson's Workmen's Compensation, § 68.14 (1995)), *aff'd in part sub nom. Hurd v. Westinghouse Elec. Corp.*, 107 F.3d 873 (7th Cir. 1997). Paragraph 7 asserts that "Defendant Nutrien had actual knowledge that Richard Clark's injuries and death were certain to occur and did nothing to prevent the same in violation of [Indiana and federal safety regulations]." (ECF 1 ¶ 7). That assertion merely recites the *Baker* standard alongside citations to workplace safety regulations. Once that legal conclusion is excised, the complaint describes a tragic workplace accident governed exclusively by the IWCA.[1] Count I must therefore be dismissed.

**B. Count II: Loss of Consortium**

Under Indiana law, the Wrongful Death Act, Ind. Code § 34-23-1-1, provides the sole remedy for the death of a spouse and extinguishes any standalone common-law consortium claim. *Durham ex rel. Est. of Wade v. U-Haul Int'l, Inc.*, 745 N.E.2d 755, 757, 766 (Ind. 2001). A loss of consortium claim is derivative of the injured spouse's underlying tort claim. *Id.* at 764. When the IWCA bars the underlying claim, the consortium claim fails as well. *Wine-Settergren v. Lamey*, 716 N.E.2d 381, 390–91 (Ind. 1999); Ind. Code § 22-3-2-6.

Plaintiff concedes that she cannot bring a standalone consortium claim. (ECF 20 at 8). Instead, she argues that these allegations describe statutory damages recoverable

---

[1] Defendant also argues under *Perry*, 637 N.E.2d at 1287, that Plaintiff failed to identify which corporate officer harbored the requisite intent. There is no need to decide whether Rule 8 requires naming specific officers at the pleading stage. Even assuming Defendant's highest decision-makers knew employees worked without PPE or separate maintenance areas, that knowledge falls short of *Baker* as a matter of law. *See Summers*, 2022 WL 3595014, at *5–6 (dismissing claim despite allegations of management's knowledge); *Agee*, 695 N.E.2d at 627–28 (same).

under her Count I wrongful death claim. Yet Count I is barred by the IWCA. With no viable wrongful death claim, Plaintiff cannot recover derivative damages. *See Wine-Settergren*, 716 N.E.2d at 390–91. Therefore, Count II must also be dismissed.

### C. Discovery and Leave to Amend

In the alternative, Plaintiff requests leave to conduct limited discovery into Defendant's internal knowledge and policies before amending her complaint. Plaintiff cites no authority permitting discovery before stating a viable claim under Rule 8. Even when relevant facts lie within a defendant's control, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. "Discovery fills in the details, but you must have the outline of a claim at the beginning." *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987). Accordingly, Plaintiff "is not entitled to discovery, cabined or otherwise." *Iqbal*, 556 U.S. at 686. The request for discovery is denied.

Still, the Seventh Circuit instructs that after a Rule 12(b)(6) dismissal, district courts should ordinarily give a plaintiff at least one opportunity to amend unless amendment is clearly futile. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). Thus, the complaint is dismissed without prejudice.

## IV. CONCLUSION

For these reasons, Defendant's Motion to Dismiss (ECF 8) is **GRANTED**. Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**.

SO ORDERED on October 29, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT